# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM BIAS,<br><br>                  Plaintiff,<br><br>     v.<br><br>SID D. BROWN, and MADISON COUNTY,<br><br>                Defendants. | Case No. 4:19-cv-00280-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S MOTION IN LIMINE (DKT. 65)**<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 66)**<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 72)** |

This decision and order resolves three pending motions: Plaintiff's Motion in Limine (Dkt. 65), Plaintiff's Motion for Summary Judgment (Dkt. 66), and Defendants' Motion for Summary Judgment (Dkt. 72).

In the Motion in Limine, Plaintiff seeks to limit testimony by Defendants as to actions taken by the Plaintiff and (now dismissed) Defendant Officer Wynn Robison prior to the 2012 traffic stop that is central to this case. Plaintiff also seeks to preclude testimony of his prior criminal history and testimony of any evidence collected or observed subsequent to the stop.

In Plaintiff's Motion for Summary Judgment, he seeks to estop Defendants "from re-litigating the subject matter of the Court of Appeals case, the Post-Conviction case, and the original criminal case, giving rise to the instant matter." He further seeks "summary judgment on the grounds that the City of Rexburg Police Department ("RPD") did not train their officers, including Officer Robison, in accordance with the Constitutional standard and are municipally

liable."

In Defendants' Motion for Summary Judgment, remaining Defendants Sid Brown and Madison County seek entry of summary judgment against Plaintiff on all remaining claims, and dismissal of the case.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter is decided on the record. The Court, being fully advised, enters the following Decision and Order:

## BACKGROUND

Plaintiff William Bias filed his Verified Complaint on July 18, 2019, seeking declaratory, injunctive, and monetary relief. Compl. (Dkt. 1). His claims stem from his 2012 arrest, by Officer Robison of the Rexburg Police Department, and a subsequent prosecution for felony DUI, by Defendants Sid. D. Brown and Madison County. Plaintiff pled guilty to the DUI charge and was sentenced to a unified term of ten years in prison, five of which were determinate. After serving approximately four years and six months of his sentence, Plaintiff prevailed on a post-conviction relief case he had filed in Idaho state court and was released from prison.

Plaintiff's post-conviction relief claim alleged ineffective assistance of counsel based upon Plaintiff's contention that his defense counsel in the underlying criminal case should have challenged the legal basis for the traffic stop and should have moved to suppress evidence that resulted from that stop. At an evidentiary hearing held in the post-conviction relief case, Plaintiff learned for the first time that there was dashcam video of the stop. Relying upon the video, the state district judge in that case concluded that Officer Robison lacked reasonable

suspicion to stop Plaintiff and the traffic stop therefore violated Plaintiff's constitutional rights. The decision was affirmed by the Idaho Court of Appeals.

Plaintiff raised six claims in this federal court case, under 42 U.S.C. § 1983. Counts One and Five were previously dismissed on summary judgment (Dkt. 79). Count Three was dismissed (Dkt. 33) after the parties stipulated to dismissing R. James Archibald, the only Defendant named in that claim. Thus, Counts Two, Four, and Six remain.

Count Two, against Brown and Madison County, alleges wrongful prosecution based on Defendant Brown not diligently releasing discovery information to Plaintiff. Compl. VI (Dkt. 1) Count Four alleges that Madison County knew or should have known that its contract public defender was failing to provide adequate, minimum standard representation. *Id.* VII. Count Six, against Brown and Madison County,[1] alleges a *Brady* violation[2] for failure to disclose video evidence of the 2012 traffic stop.

On August 31, 2020, Plaintiff filed his Motion in Limine (Dkt. 65). On September 18, 2020, Plaintiff filed his Motion for Summary Judgment (Dkt. 66). On October 21, 2020, Defendants Brown and Madison County filed their Motion for Summary Judgment (Dkt. 72). All three motions are now ripe.

On March 8, 2021, this Court granted summary judgment for Defendants Robison and RPD. (Dkt. 79.) As a result of such order, certain arguments in Plaintiff's Motion for Summary Judgment relating to claims dismissed after he filed his motion are no longer viable and therefore those arguments are fully addressed in this decision.

---

[1] Plaintiff's Complaint (Dkt. 1) also named Officer Robison and RPD as Defendants as to this claim for relief, but they were previously dismissed (Dkt. 79).

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963).

## LEGAL STANDARDS

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the court must not make credibility findings. *See id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

In deciding cross-motions for summary judgment, the court considers each party's evidence. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011); *see also Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001) ("[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified, and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.").

Even when the filing of cross-motions for summary judgment means that both parties essentially assert that there are no material factual disputes, the Court nonetheless must decide whether disputes as to material fact are present. *See id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her . . . affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). However, the court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Instead, the "party opposing summary judgment must direct [the court's] attention to specific, triable facts." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## DISCUSSION

### 1. Plaintiff's Motion in Limine Is Denied.

Plaintiff moves *in limine* (1) to limit testimony of the Defense to actions by Plaintiff and Wynn Robison prior to the 2012 traffic stop (2) to preclude testimony of Plaintiff's prior criminal history; and (3) to preclude testimony of any evidence collected or observed subsequent

to the stop (Dkt. 65). Each issue will be addressed in turn.

At the outset of Plaintiff's opening memorandum, he says he "seeks by this motion to limit testimony of the defense to actions by the plaintiff and Wynn Robison prior to his stop." (Dkt. 65-2 at 2.) However, the memorandum does not otherwise raise this argument or support it in any detail. Accordingly, the motion will be denied to the extent it seeks to limit testimony elicited by Defendants as to actions prior to the 2012 traffic stop. Plaintiff has not established under any procedural or evidentiary rule that such testimony should be so limited.

A. <u>The Court Will Take Judicial Notice of the Existence of, But Not the Facts Discussed within, the Court of Appeals Case.</u>

The "Argument" section of Plaintiff's memorandum turns first to an assertion that "judicial notice must be taken of the previous Court of Appeals case upon which this action is based." (Dkt. 65-2 at 4–6.) He requests that this Court take judicial notice "of the facts found and contained within" the Idaho Court of Appeals opinion in his post-conviction relief case. Notably, he does not request in this motion that judicial notice be taken of any trial court decisions or documents from his post-conviction relief case. He says that "[t]he facts of the underlying criminal cases pertaining to this civil litigation have been adjudicated previously by the Idaho Court of Appeals. Because the findings of fact can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, the Idaho Court of Appeals, and the records are within the court file on the instant case, the Court must take judicial notice of them." He identifies several pages of specific facts elsewhere in the memorandum that he says are described within the Court of Appeals opinion and as to which he wants judicial notice taken.

Defendants argue that taking judicial notice of facts recited in Plaintiff's post-conviction relief proceedings would be improper. They rely upon Federal Rule of Evidence 201 dealing

with judicial notice, and they note that paragraph (b) provides that "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." They maintain that the factual findings in the Court of Appeals opinion do not qualify as facts "not subject to reasonable dispute" under either prong of the Rule. They also quote another case out of this District holding that the court could "judicially notice the existence of the [other court's] opinion—which includes the stated reasoning of the authoring court—but not the facts recited in that opinion." *Morgan v. Stevenson*, 2019 WL 5685582 at *2 (D. Idaho 2019). Defendants also draw upon the Advisory Committee Notes to Rule 201, which say that "a high degree of indisputability is the essential prerequisite" to taking judicial notice of facts.

Plaintiff refines somewhat his request for judicial notice in his reply memorandum (Dkt. 69). Therein, he requests "that the Court take judicial notice of the reasoning behind and the rulings of the Idaho Court of Appeals … which clearly and unambiguously show that: 1. There was no reasonable suspicion of DUI to stop Bias' vehicle; 2. The dashcam video showed no evidence giving rise to reasonable suspicion; 3. There was an apparent violation of *Brady v. Maryland*, 373 U.S. 83 (1963); 4. That the stop, by being Constitutionally deficient, violated Plaintiff's Constitutional rights."

The Court is not persuaded by Plaintiff's argument that taking judicial notice of any facts recited in the Court of Appeals decision is proper. In the first instance, the language in the Court of Appeals decision referring to "the prosecution's *apparent* violation of *Brady*…" by its own language forecloses a finding of indisputability – even the Court of Appeals appears to have been unwilling to conclude unequivocally that there was a *Brady* violation. *Bias v. State*, 427 P.3d

830, 831 n.1 (Idaho App. 2018) (emphasis added).

More fundamentally, however, judicial notice is simply not an appropriate mechanism to have factual findings in a prior proceeding treated as undisputed (or undisputable) in a later, separate proceeding involving different claims. Elsewhere in this decision the Court addresses Plaintiff's preclusion argument, which is a proper mechanism to accomplish what the Plaintiff seeks to do with respect to the facts of the Court of Appeals decision.

As a general matter, it is unnecessary for a court to take judicial notice of the existence of a decision issued by a separate court, as legal arguments commonly draw upon decisions from other cases. However, Plaintiff seeks to do more than draw upon any legal holding in the Court of Appeals decision. Thus, even though the Court declines to take judicial notice of any facts recited in the Court of Appeals decision, the Court does take judicial notice of the *existence* of such decision. Plaintiff can draw upon that decision to the extent he thinks doing so may support any arguments he may make in this case. But Plaintiff will not be permitted to use the tool of judicial notice as a means to incorporate facts referenced in such decision as beyond dispute in this matter.

B. The Court Will Not Decide at This Time Whether to Exclude Plaintiff's Criminal History.

Next, Plaintiff moves *in limine* to exclude evidence concerning his prior incarcerations as irrelevant and prejudicial, applying Federal Rules of Evidence 401 and 403. He also argues that evidence regarding his criminal history is inadmissible as impeachment or character evidence under Federal Rules of Evidence 404(b)(1) and 609. Defendants disagree, contending that Rules 404 and 609 are inapplicable because the evidence of his criminal convictions and incarcerations will not be used as character or impeachment evidence, and the probative value of Plaintiff's relevant past criminal convictions and incarcerations are not substantially outweighed by the

danger of unfair prejudice.

Further, Defendants contend that facts relating to his criminal history are directly relevant to Defendant's defense of Plaintiff's claim of economic damages resulting from lost past and future wages. By way of example, Defendants contend that Plaintiff having spent more than 5,000 days incarcerated since age 18 is highly relevant both to his assertion that he is unable to function in society as a result of his most recent incarceration and to his earning potential at the time of his 2012 conviction that was later overturned.

The Court declines to decide the issue at this juncture. Resolving the issue requires a careful weighing of the probative value of Plaintiff's criminal history against the potential that introducing such evidence would unfairly prejudice Plaintiff's case before the jury, and the decision may be affected by how the Plaintiff's case is presented at trial. Such weighing is most appropriately undertaken by the judge who will preside at trial. Because the undersigned will not conduct the trial in this matter,[3] this issue is most appropriately deferred, to be decided by the judge who ultimately presides at trial. Therefore, Plaintiff's Motion in Limine is denied without prejudice as to this issue, so that he may renew the motion and request that the Court decide it at the time of trial, subject to any pretrial order that may be entered.

C. Plaintiff Has Not Shown Any Evidence that Should Be Excluded as "Fruit of the Poisonous Tree."

Finally, Plaintiff seeks to exclude "all evidence and statements made after the unlawful stop" (Dkt. 65-2 at 13). He says that "[i]t is apparent in discovery that the Defendants in this case wish to defend by including evidence obtained after the illegal stop of Plaintiff, including statements, observations of items in the vehicle, BAC evidence, admissions by the Plaintiff, etc.

_____

[3] The undersigned has previously publicly announced his retirement from the Bench on June 10, 2021.

The state District Judge ruled and the Idaho Court of Appeals has affirmed, the stop was illegal. Based on those holdings, Plaintiff is suing for damages resulting from the five years he spent in prison as a result of that stop. Any evidence gathered after the stop is irrelevant to this suit." *Id.* He argues that this request is based on the "fruit of the poisonous tree" doctrine, which requires suppression of evidence obtained only as a result of a Fourth Amendment violation. *See Wong Sun v. United States*, 371 U.S. 471, 487–488 (1963). He then clarifies that he seeks to exclude "ANY statements made by the plaintiff after the stop, in conjunction with the action upon which this case is based," and he acknowledges that he made prejudicial statements during the course of the criminal case about his use of alcohol and his allocution of guilt.

As his request is initially framed, Plaintiff's request to exclude "all evidence and statements made after the unlawful stop" is denied because it is overly broad and insufficiently supported by argument and authority. Granting the request on such broad language could be read to exclude Defendants from introducing any evidence more recent than 2012, which is simply unsupportable.

As to Plaintiff's more specific request to exclude evidence following the traffic stop determined to have violated the Fourth Amendment,[4] Plaintiff's motion is denied because he has not established in <u>this</u> proceeding, in the context of his Motion in Limine, that the stop was unlawful. As described above, Plaintiff's request to take judicial notice of the Court of Appeals case has been denied, so that avenue to bind this Court to any legal conclusions in the prior case is ineffective. Even though Plaintiff argues in his subsequent Motion for Summary Judgment that the prior case is preclusive in this proceeding, the Court will not consider such arguments in

---

[4] As discussed *supra*, this Court has not yet ruled as to the preclusive effect, if any, of the Court of Appeals decision.

the context of Plaintiff's Motion in Limine because they were made in support of a later motion and it would be potentially prejudicial to Defendants to apply such arguments without their having had an opportunity to be heard on such arguments in this motion. Moreover, as discussed below, the Court is denying Plaintiff's Motion for Summary Judgment and declines to hold that the Court of Appeals decision is preclusive here. Thus, Plaintiff's Motion in Limine is denied with respect to his request to exclude all evidence and statements made after the unlawful stop.

In sum, Plaintiff has not shown that he is entitled to the relief he seeks in his Motion in Limine and the motion will therefore be denied. Such denial is without prejudice as to the issue of whether the probative value of his criminal history substantially outweighs the risk of unfair prejudice but will otherwise be with prejudice.

**2. Plaintiff's Motion for Summary Judgment Is Denied.**

Plaintiff identifies two primary areas in which he seeks summary judgment. First, he "seeks an Order in this matter granting summary judgment that the Defense is estopped from re-litigating the subject matter of the Court of Appeals case, the Post-Conviction case, and the original criminal case, giving rise to the instant matter." (Dkt. 66-1 at 2.) Second, he "seeks an Order in this matter granting summary judgment on the grounds that the City of Rexburg Police Department did not train their officers, including Officer Robison, in accordance with the Constitutional standard and are municipally liable." (*Id.*)

This Court granted the summary judgment motion filed by now-dismissed Defendants Robison and RPD (Dkt. 79) after Plaintiff filed his motion for summary judgment. Because summary judgment was granted to Defendants Robison and RPD and they were dismissed from this action, the second issue in Plaintiff's motion for summary judgment will be denied as moot without further analysis here.

A.  <u>Plaintiff's Motion for Summary Judgment Will Not Be Denied on Waiver or other Procedural Grounds.</u>

As an initial matter, Defendants contend that Plaintiff has waived his motion for summary judgment by failing to comply with the requirements of Local Rule 7.1.  Such Rule requires that "the moving part must file a separate statement of all material facts … which the moving party contends are not in dispute.  Civ. L.R. 7.1(b)(1).  As a sanction for non-compliance, the Rule further provides that "[f]ailure by the moving party to file any documents required to be filed under this rule in a timely manner may be deemed a waiver by the moving party of the pleading or motion."  Civ. L.R. 7.1(e)(1).

Plaintiff argues that he "included a statement of facts in his memorandum" and he reproduced such statement of facts as a separate filing that accompanied his reply memorandum (Dkts. 73, 73-1).  He contends that inclusion of his statement of facts in his original memorandum means that he has not waived his motion, and he points out that even combining his statement of facts with the arguments in his supporting memorandum he was well under the page limit for a memorandum alone.  He also maintains that "[a]ll the information was timely filed" because his statement of facts was included within his memorandum.  Thus, he argues that he was either compliant, or at least substantially compliant, with Local Rule 7.1.  He urges the Court to find that he has not waived his motion.

The Court will not deem Plaintiff's motion waived for failure to comply strictly with Local Rule 7.1.  Plaintiff's opening memorandum did indeed include a statement of facts, even if it was not identified, as the Rule requires, as a statement of "all material facts … which the moving party contends are not in dispute."  Nor was it a "separate statement."  But context makes clear that Plaintiff presents the 13 numbered paragraphs in the "FACTS" section of his opening memorandum as if they were undisputed material facts.  Moreover, as Plaintiff points

out, his memorandum consists of less than 20 total pages, including the statement of facts, so combining the documents did not give him additional length or any other obvious benefit. Nor have Defendants argued that they were prejudiced in any way by Plaintiff's combination of what should properly have been filed as two separate documents. In such a setting, the Court will excuse Plaintiff's lack of precise compliance with Local Rule 7.1.

However, the Court is concerned about a pattern of Plaintiff's procedural non-compliance in this case. The Court reminds Plaintiff's counsel of the need to comply with procedural rules, and there should be no assumption that other violations will not have consequences.

B. Defendants Will Not Be Estopped from Relitigating the Court of Appeals Case.

Plaintiff argues that the Idaho Court of Appeals decision in his civil post-conviction relief case has preclusive effect on certain elements of the instant case. Most significantly, he argues that Defendants are collaterally estopped from re-litigating the impropriety of the 2012 traffic stop. He contends that federal courts generally must apply the preclusion law of the state where the state judgment was rendered, citing *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995). (Defendants cite alternate authority, *Patrick v. Rivera*, 2013 WL 2945118 at *3 (D. Idaho June 13, 2013), for the same proposition.) However, Plaintiff then cites and applies the Ninth Circuit's three-part test for collateral estoppel,[5] rather than the five-part test Defendants cite as applicable under Idaho law. (Dkt. 66-1 pp. 5–9.) But after his lengthy argument applying the Ninth Circuit test, Plaintiff then properly references *Ticor Title Co. v. Stanion*, 157 P.3d 613 (Idaho 2007), the governing precedent on the preclusive effects of

---

[5] Under Ninth Circuit precedent, to foreclose relitigation of an issue under federal law: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996) (alterations in original; internal quotation marks and citation omitted).

prior judicial decisions under Idaho law.  *Ticor Title* holds that:

> The doctrine of *res judicata* covers both claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel).  Claim preclusion bars a subsequent action between the same parties upon the same claim or upon claims "relating to the same cause of action ... which might have been made."  Issue preclusion protects litigants from litigating an identical issue with the same party or its privy.  Separate tests are used to determine whether claim preclusion or issue preclusion applies. *Res judicata* serves three fundamental purposes: (1) it preserves the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results; (2) it serves the public interest in protecting the courts against the burdens of repetitious litigation; and (3) it advances the private interest in repose from the harassment of repetitive claims.
> 
> ....
> 
> .... Five factors are required in order for issue preclusion to bar the relitigation of an issue determined in a prior proceeding: (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.
> 
> ....
> 
> For claim preclusion to bar a subsequent action there are three requirements: (1) same parties; (2) same claim; and (3) final judgment.

*Id.* at 617–618 (citations omitted).  Plaintiff then proceeds to argue that both claim preclusion and issue preclusion apply here to make the Idaho Court of Appeals decision binding in the instant action, albeit drawing upon the Ninth Circuit test rather than the Idaho test.

Most significant to the Court's analysis is Plaintiff's assertion that "the issues decided in the prior litigation were identical to the issues presented in the present action."  (Dkt. 66-1 at 11). Plaintiff contends that Defendants should be "estopped from relitigating *facts* in relation to the unlawful stop in September of 2012," because the Idaho Court of Appeals decision contained findings of fact, including that the trial court had found the stop was unsupported by reasonable suspicion (and was therefore unconstitutional).  (*Id.* at 6 (emphasis added).)  He contends that "[t]he Defense wishes to re-litigate … facts" and he describes in some detail several facts

litigated in the state case. (*Id.* at 6–8.) Plaintiff's argument is undermined substantially because he does not identify in any detail the specific *issues* – as distinct from facts — the Court of Appeals decided. Plaintiff superficially argues that "[t]he clear issue in the case was whether or not the stop of [his] vehicle was lawful." (Dkt. 66-1 at 9.) But he does not support that assertion with a citation to any portion of the Court of Appeals case or otherwise articulate how he reads the Court of Appeals decision as consistent with such assertion. Nor does he properly argue, by applying the elements, that collateral estoppel applies to the state trial court's decision(s) in this matter – although he does assert that such decision(s) should be treated as preclusive here.

Defendants contend that the issues decided in the Court of Appeals were different from those Plaintiff asserts in the instant action, so collateral estoppel is inapplicable here.[6] They argue that the district court granted Plaintiff's petition for post-conviction relief "solely on his ineffective assistance of counsel claim" and that the district court's discussion of the perceived *Brady* violation was merely dicta, as the district court also noted that Plaintiff failed to properly raise the alleged *Brady* violation in his petition. Defendants go on to argue that when the State of Idaho appealed the district court's grant of Plaintiff's post-conviction relief petition, the sole issues raised on appeal – and therefore the only issues potentially subject to issue preclusion with respect to the Court of Appeals decision – were two narrow issues: whether Plaintiff had properly pled the issue of ineffective assistance of counsel for failing to file a motion to suppress, and whether the district court applied the correct legal standard when granting Plaintiff's petition. Defendant expressly argues that the Court of Appeals "did not analyze or rule on the

_____

[6] Separately, Defendants cite a recent District of Idaho federal case holding that a criminal matter does not have a preclusive effect in a civil matter, based on the different purposes of civil and criminal cases. (Dkt. 71 at 8–10.) Plaintiff correctly points out that this reasoning is inapposite, as both the instant case and his state post-conviction relief are civil actions. This argument will not be further addressed herein.

reasonable suspicion for the traffic stop" and that "[t]he reasonableness of the stop was not challenged by the State on appeal and was not considered *by the Court of Appeals*." (Dkt. 71 at 5 (emphasis added).)

Resolving the question of whether previously litigated issues are identical to those raised in the current proceeding requires careful review of such prior decisions. As a starting point, however, the Court declines to undertake such a review of the district court's decision granting Plaintiff's post-conviction relief petition because Plaintiff failed to properly put that decision at issue in his opening memorandum in support of his motion for summary judgment. Although he says in the memorandum that he seeks "an Order … granting summary judgment that the Defense is estopped from re-litigating the subject matter of the Court of Appeals case, *the Post-Conviction case*, and the original criminal case…" (Dkt. 66-1 at 2 (emphasis added)), he frames his argument by saying that "the decision of *the Idaho Court of Appeals* has a preclusive effect on elements of the instant case" and he further says that "[t]he issues litigated … are bound by the decision of the *Idaho Court of Appeals*…" (Both *Id.* at 5 (emphasis added)). Throughout his argument, he repeatedly refers to the (allegedly) preclusive effect of the Court of Appeals decision but he fails to argue that any decision of the trial court is also preclusive here.

Plaintiff's opening memorandum makes four references to "prior actions" (plural) in the context of issue preclusion, but such references are insufficient to implicate the trial court's decision(s) as potentially preclusive in the instant case. The only express language in Plaintiff's opening memorandum potentially implicating the preclusivity of any trial court decision(s) is a naked assertion that "[Defendants] are equally bound by the litigation that occurred in the district court and in the Idaho Court of Appeals." *Id.* at 9. This solitary and conclusory assertion that the district court litigation is also preclusive on Defendants is not enough to raise the issue

properly for consideration, as it is unsupported by specific reference or argument applying the elements of issue preclusion to any trial court decision or decisions. Alternatively, even if this single statement were sufficient to raise the issue, the Court is unpersuaded by such argument for the same reason – it is not supported by any argument applying the elements of issue preclusion. Thus, when considering whether Defendants are precluded from litigating in this proceeding any claims or issues raised in prior proceedings, the Court will limit its analysis to the Idaho Court of Appeals decision in Plaintiff's post-conviction relief case.

The Idaho Court of Appeals affirmed the district court's judgment granting, in part, Plaintiff's petition for post-conviction relief. 427 P.3d at 831. At the beginning of the decision, within a section entitled "Factual and Procedural Background," the court drops this footnote:

> Although the district court noted it was not an intentional act on behalf of the prosecutor, the court expressed its serious concern about the prosecution's apparent violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The court concluded that the Idaho Criminal Rules required automatic disclosure of the dashcam video despite trial counsel's failure to make the discovery request. However, the district court also concluded that Bias did not properly plead or raise a claim based on a *Brady* violation in his petition.

*Id.* at 831 n.1. These are the only mentions of the *Brady* case in the decision. Moreover, based on both the context (a footnote appearing in a background section, rather than an analysis or discussion section) and the plain language of the decision describing an "*apparent* violation," (emphasis added), the Court concludes that the Court of Appeals did not actually decide whether there had in fact been a *Brady* violation. Instead, it merely repeated the district court's "serious concern" about such an "apparent violation" – while also noting, significantly, that the district court concluded Plaintiff had not properly raised a *Brady* claim in his petition.

Elsewhere in the decision appears the language "trial counsel testified that he did not know the dashcam video existed until Bias initiated post-conviction proceedings…" *Id.* at 835.

From context, reasonable minds could differ about whether such language is the Court of Appeals making its own finding or merely repeating a finding of the district court. Regardless, however, this Court does not find such language particularly significant because, either way, it is clear that the Court of Appeals is not passing judgment on the matter described: it does not evaluate the credibility of trial counsel's testimony and it does not discuss the circumstances – which Defendants dispute in the instant proceeding – related to whether, or how, trial counsel had actual or imputed possession of the video.[7]

Pertinent for this Court's assessment of the issues, the "Analysis" portion of the Idaho Court of Appeals decision includes two sub-sections, labeled "Notice and Implied Consent" and "Applying Correct Legal Standard." The first focuses on the State's assertion that "the district court erred by considering Bias's claim that his trial counsel was ineffective for not challenging the reasonable suspicion for the stop." *Id.* at 832. The decision then describes that the State argued that Plaintiff's post-conviction relief petition did not plead such a theory or otherwise provide notice that he was challenging his conviction on that basis. Also, per the decision, Plaintiff argued that the State had ample notice of the claim, including as a result of the district court's "willingness to grant the State's request to file a brief addressing the claim and to thereafter conduct an evidentiary hearing specifically addressing the claim." *Id.* Finally, the decision said the claim was tried with the implied consent of the State. *Id.*

As to this first issue, the Idaho appellate court held that "[t]he issue of reasonable suspicion for the traffic stop was not specifically raised in the petition for post-conviction relief, but the legality of the stop was generally raised. Bias did, however, expressly raise the claim

---

[7] The issue of trial counsel's possession of the video is discussed in detail *infra*, in Defendants' Motion for Summary Judgment.

orally at the end of the second evidentiary hearing." *Id.* The court further held that "[i]n addition, or alternatively, the record reveals the issue of whether Bias's trial counsel was ineffective for failing to challenge the reasonable suspicion for the traffic stop was tried with the implied consent of the State." *Id.* at 833. In sum then, as to this issue, the court held that "the district court did not err by considering Bias's claim that his trial counsel was ineffective for not challenging the reasonable suspicion for the stop." *Id.* However, nothing in this portion of the decision suggests that the Idaho Court of Appeals itself considered whether there was reasonable suspicion for the stop. The court's analysis up to this point considered only whether Plaintiff *had properly raised* the issue of reasonable suspicion at the district court.

The second sub-section of the "Analysis" portion of the Idaho appellate court's decision focuses on whether the trial court applied the correct legal standard when partially granting Plaintiff's petition. *Id.* at 833–836. Per the decision, the State asserted the district court erred by applying "an incorrect legal standard to the claim that trial counsel was ineffective for failing to file a motion to suppress challenging the reasonable suspicion for the stop." *Id.* at 833. Drawing upon applicable authority and the relevant standard, the Idaho Court of Appeals identified the key question as being whether the district court correctly ruled on whether Plaintiff had "overcome the presumption that the decision not to file the motion [to suppress] was within the wide range of permissible discretion and trial strategy." *Id.* at 834. The Court of Appeals said this:

> The State argues the district court failed to apply the second step of this two-step analysis and thus did not determine whether Bias had overcome the presumption that the decision not to file the motion was within the wide range of permissible discretion and trial strategy. According to the State, the court erroneously concluded that finding the motion to suppress would be granted was alone sufficient to conclude trial counsel's performance was deficient. The State argues application of the correct legal standard leads to the opposite result reached by the district court because trial counsel's decision to not pursue a motion to

suppress after he had reviewed the police report, read the probable cause statement, and talked with his client was reasonable and thus within the wide range of permissible discretion and trial strategy.

Bias argues the district court applied the correct legal standard by conducting both steps of the two-step analysis. According to Bias, he overcame the presumption that trial counsel's representation was within the range of permissible discretion and trial strategy. We agree.

The district court applied the correct legal standard when it determined Bias's trial counsel's performance was deficient . . . .

*Id.*

Importantly, the decision then described the *district court's findings* with respect to the

stated justification for the stop:

> With respect to the first step of the *Wurdemann* analysis, *the district court found* that the video provided an even less convincing basis than the probable cause statement for finding reasonable suspicion. *The [district] court found* that the video showed Bias was driving at the same approximate speed as the vehicle in front of him; lightly tapped his brakes; briefly touched but did not cross the white fog line; and did not significantly weave, drift, or change speeds. *The [district] court concluded* none of the factors taken individually or together would constitute a violation of Idaho law or give rise to reasonable suspicion of DUI, and thus a motion to suppress challenging the reasonable suspicion for the stop would have been granted.

*Id.* (emphases added). The Court of Appeals decision next explained that "the [district] court

addressed whether Bias had overcome the presumption that the decision not to file the motion

was within the wide range of permissible discretion at the third evidentiary hearing and in its

findings of fact and conclusions of law." *Id.* at 835. Further analysis of the district court's

holding on that point followed, but it does not have a significant bearing on the issue presently

before this Court. Thus, the issue considered by the Court of Appeals in sub-section B of the

Analysis portion of its decision was whether the district court had applied the correct legal

standard – not whether the 2012 traffic stop was improper, or any other issue.

However, the Idaho Court of Appeals decision also highlighted issues the State did not

challenge. The decision states that "the State does not challenge the district court's determination that the motion [to suppress] would have been granted." *Id.* The decision also held that "[t]he State does not challenge the district court's conclusion that Bias satisfied the second *Strickland* prong."[8] On this point, the Court of Appeals said that the district court concluded, "[B]ut for counsel's failure to request discovery and challenge the constitutionality of the stop, Bias would not have pled guilty and would have insisted on going to trial." *Id.* (alteration in original).

The Idaho appellate court also considered the related question of "the State's argument that in applying the incorrect legal standard, the district court erred by improperly relying on repeated viewings of the dashcam video and on the Supreme Court's decision in *State v. Neal*, 159 Idaho 439, 362 P.3d 514 (2015)…" *Id.* at 836. The Court of Appeals found no error on this point, noting that the district court stated "[a]fter all these viewings, and evaluating the evidence" the court was "unable to conclude that Bias's driving was sufficiently suspicious to justify a stop at that point in time." *Id.* The evidence before the district court consisted of the dashcam video plus "Bias's testimony, the testimony of trial counsel and the officer who stopped Bias, police reports, a map depicting where the stop occurred, various jail activity logs, a call summary for Madison County Jail, Rexburg police department arrest reports, and audio of the preliminary hearing." The Idaho Court of Appeals also ruled that the district court properly relied on the *Neal* decision, even though both the Court of Appeals and the district court acknowledged had not been decided as of the Plaintiff's 2012 criminal trial.

In closing its analysis, the Court of Appeals said that "[u]ltimately, *the [district] court*

---

[8] *See Strickland v. Washington*, 466 U.S. 668 (1984). The second prong of *Strickland* requires a criminal defendant (or civil post-conviction relief petitioner) to show that the deficient performance of counsel prejudiced his defense.

*concluded* none of the factors taken individually or together would constitute a violation of Idaho law or give rise to reasonable suspicion of DUI." *Id.* (emphasis added). A similar recitation by the Court of Appeals of the district court's conclusions appears in footnote 2 of the decision:

> *The [district] court concluded*, "even after considering the officer's training and knowledge of normal driving behavior, the totality of the circumstances did not provide him sufficient reasonable suspicion to stop Bias's vehicle for ... DUI." In so concluding, "the [district] Court does not lightly disregard the fact that the arresting officer was ultimately correct in his suspicion that Bias was driving under the influence. However, being right does not cure the constitutional deficiencies in an otherwise improper stop."

*Id.* at 834 n.2 (emphasis added).[9]

Against that backdrop, this Court must unravel which issues the Idaho Court of Appeals did, and did not, decide upon the State's appeal in the Idaho state court case, of the district court's partial grant of Plaintiff's post-conviction relief petition. The appeals court said plainly that it was deciding: (1) whether Plaintiff adequately pled that his trial counsel was ineffective for not challenging the reasonable suspicion for the stop; and (2) whether the district court applied the correct legal standard when considering if trial counsel was ineffective for failing to file a motion to suppress challenging the reasonable suspicion for the stop. But Plaintiff's primary argument for applying principles of preclusion is that "[t]he clear issue in the case was whether or not the stop of [his] vehicle was lawful." (Dkt. 66-1 at 9.)

---

[9] The quotations in the footnote of the Court of Appeals decision were not accompanied by citations, so the possibility exists that the "court" referenced in the footnote is not the district court which presided over Plaintiff's post-conviction relief case. To foreclose this possibility, this Court notes that the quoted language from the footnote appears on page 18 of Docket No. 65-3, which is a copy of the state district court's Findings of Fact and Conclusions of Law Re: Post-Conviction Relief Claims in Plaintiff's state case. Such filing was attached to a declaration of Plaintiff's counsel in support of his Motion in Limine. Although the Court declines to consider whether this district court decision is preclusive as to any issues or parties in the instant matter (*see supra*), because the decision is nonetheless contained within the record of this case it is wholly appropriate to review it to ensure correct attribution.

This Court is not persuaded that "whether or not the stop of [his] vehicle was lawful," was the "clear issue in the case." Even though the Idaho Court of Appeals referenced several portions of the district court's decision touching on the propriety of the traffic stop, the appellate court did not indicate in doing so that it was making its own conclusion as to whether the stop was proper.

Hence, even though the propriety of the traffic stop was an issue involved in the appeal case, it is not necessarily "*the* clear issue," as Plaintiff contends. More to the point, the undersigned is not persuaded that such issue was raised or decided on appeal, as the Court of Appeals did not consider it. Hence, regardless of the application of other elements of collateral estoppel, Petitioner cannot preclude Defendants from litigating in this action the propriety of the 2012 traffic stop because Defendant has not shown that the propriety of the traffic stop was specifically decided by the Court of Appeals.

Even so, there is no question but that the district court clearly held the traffic stop was improper, as described in the Court of Appeals decision, but Plaintiff has not properly argued in favor of treating the district court decision as preclusive here (as described *supra*). Had Plaintiff properly raised the argument here, he might be able to establish that the issue of the propriety of the stop is identical between the district court proceeding and the instant proceeding.[10] Idaho law requires that "the party seeking to bind another by a prior judgment has the burden of proving that the requirements of collateral estoppel have been met." *Pocatello Indus. Park Co. v. Steel West, Inc.*, 621 P.2d 399, 403 (Idaho 1980). It is Plaintiff's burden to show collateral estoppel

---

[10] He has not shown, however, that any other issues are identical as between the district court decision and the issues raised in the instant proceeding, including whether there was a *Brady* violation. This Court does not decide whether there were or were not any other issues identical as between the district court decision and the instant proceeding.

applies and because he waived argument with respect to the preclusive nature of the district court decision, he cannot succeed in binding Defendants here to the decision of that court.

For thoroughness, this Court will consider the parties' separate arguments as to whether Defendants were parties to or in privity with parties to the prior case, which is an additional element of collateral estoppel. Defendants contend that they cannot be bound by collateral estoppel because they were not parties or in privity with parties to the post-conviction relief proceeding. (Dkt. 71 pp. 7–14). As indicated in the caption of the Court of Appeals decision, the parties to that proceeding were Plaintiff (as petitioner and appellee) and the State of Idaho (as respondent and appellant).

Plaintiff quotes U.S. Supreme Court case law holding that "one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own … is as much bound … as he would be if he had been a party to the record." *Montana v. U.S.*, 440 U.S. 147, 154 (1979). Similarly, the Supreme Court has characterized the relationship as one of "substantial identity" between parties. *Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 621 (1926). "One who is not a party of record may be bound if he had a sufficient interest and participated in the prior action." *U.S. v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980). Additionally, "[c]ourts have recognized that a non-party may be bound if a party is so closely aligned with its interests as to be its 'virtual representative.'" *Id.*

With these holdings in mind, Plaintiff argues that Defendants Brown and Madison County[11] were in privity with the State of Idaho in the post-conviction relief case. As to

---

[11] Defendant argues similarly as to Defendants Robison and RPD, but because they have been dismissed from this action the argument is not considered as to those dismissed defendants.

Defendant Brown, Plaintiff argues that "he was counsel of record for the State in the proceedings" and he "was given notice of the proceedings and actively participated in the litigation…. [he] argued to [the district court] that officer Robison had reasonable suspicion to stop William Bias and he examined the witnesses on that point." (Dkt. 73 at 7.) As to Defendant Madison County, Plaintiff says that the involvement of its representative, Defendant Brown, in the proceedings establishes that it was in privity with the State.

Defendants argue that they were not in privity with the State because, in Defendant Brown's case, "he did not have a direct personal interest in the post-conviction relief proceeding" and "he was not represented by counsel in the post-conviction relief proceeding." (Dkt. 71 at 12.) In Defendant Madison County's case, Defendants argue, it "did not have an interest in the proceeding nor did it participate in the proceeding." (Dkt. 71 at 13.)

The Court agrees with Defendants that Plaintiff has not sufficiently shown that Defendant Brown was in privity with the State in the post-conviction proceeding. Defendant Brown was the elected prosecuting attorney who prosecuted the case to a guilty plea by Plaintiff in the criminal case in state district court. Brown acted as the legal representative of the State in that case, but he was not a party. His personal involvement was in the role of the legal representative, not in a personal capacity. Defendant Brown, as the prosecuting attorney, had an interest in representing the interest of the State – here, Madison County – in enforcing the criminal statutes of the state of Idaho, but not a personal interest that creates the sort of substantial identity and matching interest described in *Montana* and *Schendel*. However, his personal involvement as the legal representative of the State ended after the criminal trial.

The Defendant Madison County, however, *is* the State in criminal proceedings brought in

that county, and therefore was a party in that case. [12]  Hence, Defendant Madison County was not just in privity, it was a party in the trial case.  Madison County had the same interest in each proceeding, from the criminal trial to the appeal, and in the post-conviction case.

Because Plaintiff has failed to show that the Defendant Brown was in privity with the State as to the appeal, he cannot preclude Defendant Brown from re-litigating any issues decided by the Court of Appeals.  Madison County, in contrast, was a party in all the underlying proceedings.  However, because Plaintiff has failed to show that the issues actually decided by the district court are identical to the issues raised in the instant proceeding, he cannot preclude Defendants from re-litigating any issues decided by the district court. [13]  Accordingly, the Court need not and does not consider whether Plaintiff has established the remaining elements of collateral estoppel.  This result accrues because although Plaintiff's Motion for Summary Judgment mentions, it does not fully argue, the doctrine of claim preclusion.  Under Idaho law, claim preclusion bars a subsequent action when three requirements are met: "(1) same parties; (2) same claim; and (3) final judgment." *Ticor Title*, 157 P.3d at 618.  The Court finds that claim preclusion is inapplicable in this matter because (regardless of whether the parties are the same), the claims are distinct.  Plaintiff is pursuing declaratory, injunctive, and monetary relief under a federal civil rights statute.  In his post-conviction relief action in state court, Plaintiff pursued (and received) the relief of having the guilty plea in his underlying criminal case withdrawn, based on a claim of ineffective assistance of counsel.  To the extent that Plaintiff's opening

---

[12] The Court of Appeals decision relates that Deputy Attorney General Kenneth K. Jorgensen, not Defendant Brown, argued the appeal.

[13] Even if Plaintiff had not waived his argument as to applying collateral estoppel based on the district court's decision, he has failed to establish the essential element that "the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case." *Ticor Title*, 157 P.3d at 618.

memorandum in support of his Motion for Summary Judgment may be read to contend that both the current and prior proceeding involve claims based on an alleged *Brady* violation (which would require reading his opening memorandum remarkably liberally), the Court is not persuaded by such argument. The Court of Appeals decision did not decide any *Brady* claim, and the district court language quoted in the Court of Appeals decision described only an "apparent" *Brady* violation that Plaintiff had not properly raised in his petition.

In summary, Plaintiff's Motion for Summary Judgment seeks to have an Order entered in his favor holding that Defendants Robison and RPD were inadequately trained and that Defendants must be precluded from re-litigating whether the 2012 traffic stop was proper. The first of these requests is denied as moot, and the second is denied because Plaintiff has failed to carry his burden of establishing that claim preclusion, as an affirmative exercise of collateral estoppel, applies to this case. Plaintiff's Motion for Summary Judgment will be denied in its entirety.

   3. **Defendants' Motion for Summary Judgment Motion Is Granted in Part and Denied in Part.**

Defendants Brown and Madison County seek dismissal with prejudice of all three claims alleged against them (Dkt. 72). This decision will address the claims in the same order as Defendants' arguments.

   A. <u>Summary Judgment is Denied on Plaintiff's Fourth Claim.</u>

Plaintiff alleges in his Fourth Cause of Action that "[t]he continued lack of Defendant Archibald to request discovery from [Defendant] Brown shows a general pattern of malpractice of which the County of Madison knew or should have known that its contract public defender [Archibald] was failing to provide adequate, minimum standard representation." Compl. VII[I] ¶ 3 (Dkt. 1).

Defendants contend there is no evidence that Mr. Archibald failed to conduct adequate discovery. They frame Plaintiff's claim as resting solely on the allegation that because Mr. Archibald did not review the dashcam video of the stop that he failed to conduct adequate discovery. However, Defendants contend that Mr. Archibald was aware that dashcam videos were used in 2012 of arrests in Rexburg and Madison County, and Mr. Archibald was given a copy of the dashcam video from Plaintiff's arrest.[14] They argue that "because Plaintiff indicated that he wanted to plead guilty, Mr. Archibald testified that he was not concerned about the dashcam video and did not review it with Plaintiff." (Dkt. 72-1 at 3.) Defendants cite to excerpts from Mr. Archibald's deposition (Dkt. 71-2 pp. 75, 76) that support their argument.

Defendants further contend that even if Mr. Archibald could be said to have failed to conduct adequate discovery in this case, there is no evidence that he had a practice of conducting inadequate discovery or that Madison County knew or should have known about such practice. Defendants contend the record indicates Mr. Archibald was always provided with copies of everything in Madison County's file. In support of this argument, they cite the declaration of Tava Gee, a legal secretary in the Madison County Prosecuting Attorney's Office in 2012 (Dkt. 72-4). In her declaration, Ms. Gee said:

> While providing discovery to defendants I became familiar with Sid Brown's and Jim Archibald's discovery practice. Mr. Archibald did not usually conduct formal written discovery with our office. When Mr. Archibald was assigned to a case, Mr. Brown would have us make a copy of everything in the file and Mr. Archibald would come by and pick up the copies personally or have us place them in his box at the courthouse. At times, when a case was going to trial Mr. Archibald would serve a formal written discovery request to make sure he had everything. Mr. Archibald was always provided with copies of everything in the file.

Gee Decl. ¶ 4 (Dkt. 72-4 at 2).

---

[14] This issue is taken up later in this decision. *See infra*.

Plaintiff responds first with his argument that Defendants may not re-litigate the adequacy of Mr. Archibald's discovery procedures because the Idaho Court of Appeals previously adjudicated the issue and found such procedures to be inadequate. But, as described *supra*, the Court of Appeals did not make a decision as to the adequacy of Mr. Archibald's discovery procedures. Rather, that court's decision stated that "[t]he district court outlined counsel's inadequate preparation and objective shortcomings," including related to failing to request discovery. *Bias v. State*, 427 P.3d at 835. But it did not itself consider the adequacy of Mr. Archibald's discovery procedures. Moreover, Plaintiff's argument to apply collateral estoppel was denied for the reasons previously described.

Plaintiff goes on to argue that Defendants are simply not credible when they contend that "the undisputed facts show that Mr. Archibald conducted adequate discovery," given that, Plaintiff says, there are no facts in the record to show that Mr. Archibald conducted *any* discovery. Plaintiff notes that the Court of Appeals decision "upheld" the district court's ruling that "[B]ut for counsel's failure to request discovery and challenge the constitutionality of the stop, Bias would not have pled guilty and would have insisted on going to trial." *Id.* at 836 (alteration in original).

There is, perhaps, room to disagree regarding whether the Court of Appeals "upheld" that portion of the ruling, as it is referred to in the decision immediately following a sentence in which the decision notes that the State did not challenge the district court's conclusion that Bias satisfied the second *Strickland* prong. But, regardless, there is a clear discrepancy between what the district court said about Mr. Archibald's discovery procedures (as evidenced by the cited language in the Court of Appeals decision) versus Defendants' argument about such procedures. Therefore, at a minimum there is a genuine dispute of material fact as to the adequacy of what

discovery was, or was not, done by Mr. Archibald.  Therefore, Defendants have not shown they are entitled to summary judgment on the fourth claim on the basis that Mr. Archibald's discovery procedures were adequate.

However, Defendants also argue that even if such procedures were not adequate (or if there is a genuine dispute of material fact as to their adequacy), they are nonetheless still entitled to summary judgment because there is no evidence Mr. Archibald had a practice of conducting inadequate discovery or that Madison County knew or should have known of such a practice. Plaintiff has pointed to no evidence in the record tending to refute Defendants' contention on this point.  He does not cite record evidence that Mr. Archibald had a practice of conducting inadequate discovery and he does not cite record evidence that Madison County knew or should have known about such a practice.

As described earlier, the moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact.  *See Devereaux*, 263 F.3d at 1076.  To carry this burden, the moving party may simply point out the absence of evidence to support the non-moving party's case.  *See Fairbank*, 212 F.3d at 532.  But the Court must consider the entire record in that regard, a record which contains the declaration offered by Defendants and referenced just above in this decision, of Tava Gee, a legal secretary in the Madison County Prosecuting Attorney's Office in 2012 (Dkt. 72-4).  The Court sets out again here, what Ms. Gee said in her declaration:

> While providing discovery to defendants I became familiar with Sid Brown's and Jim Archibald's discovery practice.  Mr. Archibald did not usually conduct formal written discovery with our office.  When Mr. Archibald was assigned to a case, Mr. Brown would have us make a copy of everything in the file and Mr. Archibald would come by and pick up the copies personally or have us place them in his box at the courthouse.  At times, when a case was going to trial Mr. Archibald would serve a formal written discovery request to make sure he had everything.  Mr. Archibald was always provided with copies of everything in the

file.

Gee Decl. ¶ 4 (Dkt. 72-4 at 2).

Ms. Gee's declaration is evidence of Madison County's knowledge of Mr. Archibald's practices, as the County's contracted public defender, as to discovery. It reflects an informal process, apparently by informal agreement, between Mr. Archibald and the county prosecutor. If Plaintiff can persuade the fact-finder that the process was inadequate, then he also has evidence from which to argue that Madison County had knowledge of defense counsel's inadequate discovery practices.

Therefore, Defendants' motion for summary judgment on this claim will be denied.

B. Summary Judgment is Denied as to Plaintiff's Second and Sixth Claims.

Plaintiff's second claim for relief contends that "Defendant Brown, acting as agent and on behalf of Defendant Madison County, within the scope of his employment, wrongfully, unlawfully and maliciously prosecuted Plaintiff when Defendant Brown did not diligently release discovery information to Plaintiff." Compl. VI ¶ 2 (Dkt. 1). Plaintiff alleges in his sixth claim for relief that "Defendants together violated the due process and other civil rights of Plaintiff when they maliciously and intentionally caused the arrest of Plaintiff as they knew or should have known there were no grounds nor reasonable suspicion for his stop." Compl. X ¶ 2 (Dkt. 1). The sixth claim further alleges that "Defendants together violated the due process and other civil rights of the Plaintiff when they committed a *Brady* violation by not releasing video evidence, which they knew to be exculpatory." *Id.* X ¶ 3.

Defendants contend that all exculpatory evidence was provided to Plaintiff's attorney. First, they say the dashcam video was turned over to Plaintiff's attorney after Plaintiff's September 4, 2012 arrest and thus there is no evidence that Defendants violated Plaintiff's

constitutional rights. Second, they contend there is no evidence the video is exculpatory. Finally, they contend that "because Plaintiff pleaded guilty and waived his right to go to trial on this matter, he cannot show that he had a right to the dashcam video prior to reaching the plea agreement" (Dkt. 72-1 pp. 5–6).

     *i. Whether the Video Was Disclosed Is a Genuinely Disputed and Material Fact.*

Defendants say record evidence shows that at the time of Plaintiff's arrest on September 4, 2012 following the traffic stop giving rise to the claims in this case, he was represented by attorney Ron Swafford on an unrelated matter. While Mr. Swafford was representing Plaintiff on a prior DUI, Defendants argue, the Record of Actions for Madison County Case No. CR-2012-2873 shows that on September 6, 2012 Mr. Swafford appeared as defense counsel for Defendant on the at-issue September 4, 2012 DUI. Defendants then contend that during a meeting between Defendant Brown and Mr. Swafford on the unrelated matter, Tava Gee gave a copy of the dashcam video from the September 4, 2012 traffic stop to Mr. Swafford. Mr. Brown testified that he specifically remembers instructing Ms. Gee to give a copy of the video to Mr. Swafford.

These factual assertions are supported by citations to record evidence. *See* Record of Actions entry for 09/06/2012, naming Ronald Swafford as defense attorney (Dkt. 71-2 at 46); Brown Dep. 9:4–10:5 (Dkt. 71-2 at 40); Gee Decl. ¶¶ 6, 7 (Dkt. 72-4). Moreover, although Mr. Swafford testified he has no recollection of these events, he also testified that he has no reason to dispute the testimony of either Defendant Brown or Ms. Gee. Swafford Dep. 37:16–38:3 (Dkt. 72-3 at 7). From this, Defendants argue that there was no *Brady* violation because a copy of the video was provided to Mr. Swafford, who represented Plaintiff at his arraignment in the criminal

proceeding resulting from the September 4, 2012 traffic stop and arrest.[15]

Separately, Defendants argue that at the relevant times, Mr. Archibald was an associate of working in Mr. Swafford's law firm. Quoting Mr. Archibald's deposition testimony, they say that (1) 50 % of Mr. Archibald's income, including his public defender contract, went to Mr. Swafford; (2) Mr. Archibald's billing was done through Swafford Law; and (3) other associates working for the law firm assisted Mr. Archibald on his public defender cases when he was unable to attend hearings. Hence, Defendants argue that "[b]ecause Mr. Swafford and Mr. Archibald were practicing at the same law firm in 2012, providing a copy of the dashcam video to Swafford Law through Mr. Swafford satisfied any requirement that Madison County had to provide the video to Mr. Archibald at Swafford Law."

Defendants next argue that the "undisputed evidence" shows that dashcam video was separately provided to Mr. Archibald. They refer once more to the declaration of Tava Gee: "After Mr. Archibald was appointed to represent Mr. Bias in Madison County Case No. CR-2012-2873 I prepared a discovery packet with the dashcam video as all other documents from that case. I distinctly remember that Mr. Archibald was given a copy of that discovery packet. To the best of my memory, Mr. Archibald did not file a formal discovery request in this case." Gee Decl. ¶ 8 (Dkt. 72-4). Defendants also quote Mr. Archibald's deposition, during which he said, "I don't know if I got a video or not." Archibald Dep. 27:14–18 (Dkt. 72-3 at 11).

In opposition, Plaintiff argues that:

the evidence in the record clearly shows that 1) Sid  Brown never delivered a copy of the dashcam video to James Archibald, 2) that James Archibald was Bias' attorney of record, 3) that Ron Swafford never represented Mr. Bias or appeared at any hearing on his behalf concerning the September 4, 2012 unlawful stop of his vehicle, and that 4) James Archibald did not work for Ron Swafford at the time he

---

[15] Mr. Archibald, not Mr. Swafford, represented Plaintiff in the criminal case after the initial appearance.

was appointed to be Bias' attorney.

(Dkt. 74 at 8.)  Plaintiff supports these positions point by point.  First, he argues that the transcript of an evidentiary hearing in the post-conviction relief case discloses Mr. Archibald's testimony that he did not receive a copy of the dashcam video and was not aware that it existed until the post-conviction hearing.  The partial transcript Plaintiff submitted into the record contains the following discussion from an evidentiary hearing held January 12, 2017 in the post-conviction relief proceeding:

> THE COURT: I have a couple of questions for you, Mr. Archibald. Again, I'm not sure if the record is clear on this. Did you even know that a video existed prior to the time of him pleading guilty, the dashboard video of the stop?
> JAMES ARCHIBALD: I can't remember if the police report refers to a video. I – but, yes, if a client asks for – to contest the matter, then, yes, I ask for a video.
> THE COURT: Right. But my question is: Did you know that a video even existed?
> JAMES ARCHIBALD: No. I don't recall ever asking the prosecutor. I don't recall.
> ….
> THE COURT: Okay. But, again, I guess what I'm trying to get at is what you did you know and when did you know it about the video? When did you first become aware that a video existed?
> JAMES ARCHIBALD: During this postconviction case.
> THE COURT: And you still have not seen the video?
> JAMES ARCHIBALD: That's correct.

Tr. 3:4–16, 4:1:9 (Dkt. 74-2 at 60).

There are facts offered by both parties on this subject.  The result is a genuine dispute of material fact as to whether Mr. Archibald was personally provided a copy of the video prior to Plaintiff's entry of plea in his criminal case.

Next, Plaintiff argues that Mr. Archibald, not Mr. Swafford, was Plaintiff's attorney of record on the criminal case arising from the September 4, 2012 traffic stop and arrest.  Plaintiff acknowledges that Defendants cited to record evidence showing that Mr. Swafford appeared at Plaintiff's initial appearance in the criminal case, but such evidence, Plaintiff contends, "has been clearly established as an error by the Court Clerk in the register of actions" (Dkt. 74 at 10).

Plaintiff notes that although Mr. Swafford's name appears in the minute entry of the Register of Actions (Dkt. 71-2 at 46), the case information sheet identifying the parties and their counsel (Dkt. 71-2 at 42) identifies "Garner, Joshua Aaron" as the only "active attorney" and "Archibald, R. James" as the only "inactive attorney." Mr. Swafford is not identified on the case information sheet as either an active or an inactive attorney. Plaintiff says that Mr. Swafford was representing him on a different matter on the same day, but that Mr. Swafford never represented him on the criminal case at issue here.

Here also, there is genuine dispute of material fact as to whether Mr. Swafford represented Plaintiff in the criminal case that led to the instant proceeding. Taking reasonable inferences in Plaintiff's favor, a jury could find that Mr. Swafford's name appearing on the Register of Actions was a clerical error that is adequately described by the circumstances represented by Plaintiff. Thus, Defendants are not entitled to summary judgment on this basis.

Next, Plaintiff argues that Mr. Archibald was not working for Mr. Swafford or his office during his appointment as Plaintiff's public defender in the relevant criminal case. Plaintiff cites Mr. Archibald's deposition testimony that the relationship between himself and Swafford Law was that of an "office-sharing and profit-sharing relationship." Archibald Dep. 6:7–22 (Dkt. 74-2 at 6). Plaintiff further cites Mr. Archibald's deposition testimony that he "was not working in Mr. Swafford's office for September and October of 2012," but the citation provided (Archibald Dep. 34:25–35:24 (Dkt. 74-2 at 13) does not support such assertion. Instead, the referenced testimony discusses whether in September and October of 2012 Mr. Archibald paid over one-half of his earned income to Swafford Law, to which Mr. Archibald said "yes." Moreover, earlier in Mr. Archibald's deposition, shortly after the discussion of his relationship with Swafford Law, the following exchange occurred:

In 2012 you were office-sharing with Ron Swafford at that time?
A. Yes.
Q. And so is that during the entire year?
A. Yes.

Archibald Dep. 7:13–17 (Dkt. 74-2 at 6).  Despite this discrepancy, this Court is persuaded that Defendants have failed to show beyond genuine dispute that Mr. Archibald was sufficiently associated with Mr. Swafford such that even if the video was provided to Mr. Swafford it should be imputed also to have been provided to Mr. Archibald.

Therefore, summary judgment on this claim, based upon this particular argument, will not be granted.

### ii. Whether the Video Was Exculpatory Is a Genuinely Disputed and Material Fact.

Defendants continue to maintain, notwithstanding the findings of the district court in the post-conviction relief case (as described by the Idaho Court of Appeals), that the 2012 traffic stop was supported by probable cause.  They say that the undisputed evidence shows that the events portrayed on the dashcam video were accurately described in the police report in this case, and they say that even Mr. Archibald testified, prior to Plaintiff's DUI in this matter, that he had handled two other cases where the judge had upheld traffic stops based on similar facts.

Plaintiff, as has been discussed at length in this decision, contends the video is exculpatory and that the Idaho Court of Appeals decision specifically said the district court "found that the video provided an even less convincing basis than the probable cause statement for finding reasonable suspicion." (Dkt. 74 at 6, quoting *Bias v. State*, 427 P.3d at 834.)  The Court is persuaded on this argument alone that there is, at a minimum, a genuine dispute of material fact as to whether the video is exculpatory, if not a steep hurdle for Defendants to surmount to establish beyond genuine dispute that the video is not exculpatory.  The fact that traffic stops may have been upheld in similar factual settings does not overcome the significant

fact that a subsequent district court trial judge court found the video to be completely

exculpatory.[16]

   *iii. Plaintiff Did Not Waive Any <u>Brady</u> Claims by Pleading Guilty.*

   Finally, Defendants argue that Plaintiff's second and sixth claims, both dependent on

allegations of a *Brady* violation, should be dismissed because by pleading guilty Plaintiff waived

his right to a fair trial and any protections under *Brady*.  They quote a Supreme Court

concurrence by Justice Thomas that "[t]he principle supporting *Brady* was 'avoidance of an

unfair trial to the accused.'  That concern is not implicated at the plea stage.'" *U.S. v. Ruiz*, 536

U.S. 622, 634 (2002) (Thomas, J., concurring in the judgment) (quoting *Brady*, 373 U.S. at 87).

They then quote the majority opinion in *Ruiz* for the proposition that "[w]hen a defendant pleads

guilty he or she, of course, forgoes not only a fair trial but also other accompanying

constitutional guarantees."  *Ruiz*, 536 U.S. at 628.  Defendants rely exclusively on these

quotations for their argument that Plaintiff cannot assert a violation of his *Brady* rights.

   Plaintiff does not directly address this argument.  However, the Court finds that this

argument is premised on a legal rather than factual question, as it turns on the application of the

*Ruiz* case rather than on the particular facts of the instant case (whether disputed or not).

   The Court is not persuaded that a person who pleads guilty waives his rights under *Brady*

*v. Maryland*.  The *Ruiz* case does not expressly stand for such a proposition.  Indeed, after

referring to "other accompanying constitutional guarantees," the *Ruiz* opinion cites a case

holding that "pleading guilty implicates the Fifth Amendment privilege against self-

---

[16] This holding is not inconsistent with the Court's denial of the preclusion arguments raised in Plaintiff's Motion for Summary Judgment.  Plaintiff did not succeed in estopping Defendants from re-litigating any issues, but the facts and reasoning of prior rulings in the record may nonetheless serve as evidence the Court may consider when deciding whether Defendants have met their burden to show a lack of a genuine dispute of material fact.

incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to trial by jury." *Ruiz*, 536 U.S. at 628 (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)). Conspicuously missing from Defendants' briefing on this subject is any citation applying *Ruiz* to a case involving a *Brady* violation discovered after a guilty plea. To the extent Defendants merely urge extending *Ruiz* into this circumstance, the Court declines to do so on this record.

The Court has considered and rejected all of Defendants' arguments seeking dismissal of Plaintiff's second and sixth claims. Thus, their Motion for Summary Judgment will be denied, in its entirety.

## CONCLUSION

As described herein, Plaintiff's Motion in Limine and Motion for Summary Judgment are denied, and Defendants' Motion for Summary Judgment is denied.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's Motion in Limine (Dkt. 65) is DENIED, but without prejudice solely as to the issue of excluding Plaintiff's criminal history at trial;

(2) Plaintiff's Motion for Summary Judgment (Dkt. 66) is DENIED;

(3) Defendants' Motion for Summary Judgment (Dkt. 72) is DENIED.

DATED: June 1, 2021

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge